1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JEFFERY SILVAS,                              Case No.  1:19-cv-01186-HBK

12                   Plaintiff,                    OPINION AND ORDER REMANDING AS
                                                   TO ISSUE ONE[1]
13         v.
                                                   (Doc. No.  15)
14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                   Defendant.
16

17

18

19         Jeffery Silvas ("Plaintiff" or "Silvas") seeks review of a denial of Social Security benefits.

20    In an April 17, 2018 decision, Administrative Law Judge Matilda Surh ("ALJ") found Plaintiff

21    was not disabled as defined in the Social Security Act from August 12, 2015, the date of the

22    alleged disability onset, through April 17, 2018, the date of the decision.  (Doc. No. 11-1 at 21-

23    36).  Plaintiff exhausted his available administrative remedies and the case is properly before the

24    Court.  Having reviewed the record, the memoranda, and the applicable law, and for the reasons

25    stated below, the Court concludes the Commissioner's decision is due to be remanded on issue

26    one.

27
      _____
28    [1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
      § 636(c)(1).  (*See* Doc. No. 12).

## I.  Issues on Appeal

Plaintiff raises three issues on appeal:

> 1.  The ALJ improperly discredited Plaintiff's subjective complaints of pain;
>
> 2.  The ALJ failed to account for all of Plaintiff's limitations in the Residual Functional Capacity Assessment, primarily his use of a cane;
>
> 3.  The ALJ improperly rejected treating physician Dr. Gary Critser's medical opinions.

(Doc. No. 15 at 6, 7, 11, 13).  Plaintiff further argues that the above errors were harmful.  (*Id.* at 7).

## II.  Standard of Review

This Court reviews the Commissioner's decision to determine whether it is based on proper legal standards under 42 U.S.C. § 405(g) and whether substantial evidence in the record supports it.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted).  It is more than a mere scintilla, but less than a preponderance.  *Connett v. Barnhart*, 340 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  But the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Tackett*, 180 F.3d at 1098 (citations omitted).  The Court "may only consider the reasons provided by the ALJ in the disability determination and 'may not affirm the ALJ on a ground upon which he did not rely.'"  *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti*, 533 F.2d at 1038.  With respect to the ALJ's legal conclusions, however, the Court's review is *de novo*.  *Edlund v. Massanari*, 253 F.3d 1152,

1  1156 (9th Cir. 2001).

2  **III.  The ALJ's Opinion**

3  At step one of the sequential evaluation process, the ALJ found Silvas had not engaged in

4  substantial gainful activity since the date of onset, August 2, 2015.  (Doc. No. 11-1 at 26).  At

5  step two, the ALJ found severe impairments of: "status post lumbar laminectomy and fusion L4-

6  5, side effect of medications, mild degeneration joint disease of knees, and major depressive

7  disorder." (*Id.*).  The ALJ determined Silvas' obesity and mild pulmonary hypertension were not

8  severe.  (*Id.*).  However, the ALJ found Plaintiff does not have an impairment or combination of

9  impairments that "meets or medically equals the severity of one of one of the listed impairments

10  of 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*).   As to step four, regarding residual

11  functional capacity ("RFC"), the ALJ found Silvas:

12  
13  
14  
15  
16  

> has the RFC to perform light work as defined in 20 CFR 404.1567(b).
> Specifically, the claimant can lift and carry 20 pounds occasionally
> and frequently 10. He could stand and walk for 4 hours out of an 8-
> hour day.  He could sit for 6 hours out of an 8-hour day. He can
> occasionally climb ramps and stairs, ladders, ropes and scaffolds,
> stop, kneel, crouch and crawl.  He could frequently balance. He can
> perform non-complex and routine tasks with 3-5 step instructions,
> and no jobs that require hypervigilance due to side effects from
> medications.

17  In light of Silva's RFC, the ALJ found he did not have the ability to perform past relevant work

18  as a phlebotomist, medical assistant, morgue attendant, or medical laboratory technician.  (*Id.* at

19  34).  As to step five, the ALJ found based on Silva's age, education, work experience, and RFC

20  that jobs exist in significant numbers in the national economy for him to perform, including

21  mailroom clerk, information clerk, and office helper.  (*Id.* at 35).

22  **IV.  Analysis**

23  As set forth above, Silvas raises three claims.  The three claims overlap to the extent the

24  ALJ discounted Silvas' subjective complaints of pain based on medical notes from treating

25  physicians.  Part of discounting Silvas' subjective complaints of pain involve the issue raised

26  under claim 2, whether Silvas needed a cane to walk.  And the cane was prescribed by Dr. Critser,

27  which is the final issue raised in ground three, but the ALJ gave greater weight to other treating

28  physicians, noting Critser relied on Silvas' subjective complaints of pain while the record did not

1    show Dr. Critser conducted any range of motion testing or any objective physical examination.

2    (Doc. No. 11-1 at 32).  The Court addresses each claim in turn but notes the three grounds for

3    relief are in part interrelated.

4              **A.  Plaintiff's subjective complaints of pain**

5              In his first claim, Silvas assigns error to the ALJ for not providing clear and convincing

6    reasons for rejecting Silvas' testimony about his symptoms and pain.  (Doc. No. 15 at 7-8).

7    Silvas argues a "lack of medical evidence was the sole basis for the ALJ to discredit Silvas'

8    testimony."  (*Id.* at 10).  Interspersed within Silvas' argument are references to Dr. Critser's

9    medical evaluations of Silvas, which the ALJ gave less weight than the agency's treating

10   physicians, and references to Silvas' antalgic gait, or at times lack thereof.  (*Id.* at 10-11).

11             Upon consideration of the arguments, applicable case law, and careful review of the ALJ's

12   opinion, the Court agrees remand is necessary on this first issue because the ALJ's opinion does

13   not provide clear and convincing reasons based on substantial evidence to discredit Silvas'

14   testimony.  As discussed in more detail below, the ALJ generally points to the medical evidence,

15   but aside from use of the cane, does not make specific findings directed at Silvas' testimony for

16   this Court to discern what portions of Silvas' testimony the ALJ deemed not credible and what

17   specific evidence from the medical reports contradict that testimony.  *See Brown-Hunter v.*

18   *Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding reversible legal error when ALJ generally

19   reviewed medical record without providing clear and convincing reasons for finding the

20   claimant's symptom testimony not credible).

21             The limiting effects of pain are subjective and difficult to measure.  *Coleman v. Saul*, 979

22   F.3d 751, 756 (9th Cir. 2020).  Therefore, the ALJ's assessment of the claimant's credibility is

23   especially important. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) (noting that

24   [t]he ALJ's assessment of the claimant's credibility [is] exceptionally important in excess pain

25   cases," which "often hinge entirely on whether or not the claimant's description of what he is

26   feeling is believed.").  An ALJ may not discredit the claimant's subjective complaints of pain

27   solely because the objective evidence fails to fully corroborate the degree of pain alleged and

28   must provide clear and convincing reasons for discrediting a claimant's testimony concerning

4

1   symptoms and pain.  *Id.*  (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

2   An ALJ must engage in the following two-step analysis to evaluate credibility of a

3   plaintiff's testimony about subjective pain.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

4   First, the ALJ must determine whether there is objective medical evidence of an underlying

5   impairment that could reasonably be expected to produce the pain or other symptoms alleged.

6   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation

7   omitted).  Second, if the plaintiff satisfies the first element, and there is no evidence of

8   malingering, the ALJ can reject the testimony about severity of symptoms only by offering

9   specific, clear, and convincing reasons for doing so.  *Id.* at 1036 (internal quotation marks and

10   citations omitted).  The clear and convincing reasons standard is "the most demanding required in

11   Social Security cases."  *Moore v. Comm. of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). [2]

12   Silvas provided the following testimony during the hearing.  He stopped working at the

13   Veterans Administration due to intense lower back pain. (Doc. No. 11-1 at 51).  He is not able to

14   do any chores at home and he cannot bend over to pick up dirt after sweeping, instead his wife

15   does.  (*Id.* at 52, 54).  He also needs assistance when showering, specifically help with cleaning

16   his lower body.  (*Id.* at 55).  He experiences a "stabbing" pain and that he can walk no further

17   than a half a block without having to take a break for 10 to 20 minutes.  (*Id.* at 53).  The cause of

18   Silvas' pain was identified as a failed fusion syndrome related to spinal fusion in his lower back

19   L4-5. (*Id.* at 55, 62).  Although he testified that a spinal stimulator takes away some of the edge,

20   the pain remains at a level 5 or 6. (*Id.*).  Without the stimulator, Silvas placed his pain level at a 9.

21   (*Id.*).  His hobbies involve shield making, but he can sit for only 20 minutes before he must stand,

22   or lay down, before he is able to return to shield making.  (*Id.* at 59).  He lays down 4 or 5 times

23   a day in an eight-hour day. (*Id.*).

24   The ALJ, in addressing Plaintiff's complaints of pain, found:

25
26   After careful consideration of the evidence, I find that the claimant's
medically determinable impairments could reasonably be expected
to cause the alleged symptoms; however, the claimants statements
concerning intensity, persistence and limiting effects of these

27

28   _____
[2] The Court notes the Commissioner's objection to this standard for the record.  (Doc. No. 16 at 10, fn. 7).

symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they were not fully supported by the objective evidence of record.

(Doc. No. 11-1 at 29). Thus, the ALJ found Silvas met the first test—namely presenting objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain alleged. The ALJ did not find malingering. Thus, the Court considers whether the ALJ made "specific findings stating clear and convincing reasons" to reject Silvas' complaints of pain. As noted above, remand is warranted if the ALJ failed to do so. *Morris v. Astrue*, 323 F. App'x 584, 586 (9th Cir. 2009).

The record reflects the ALJ proceeded to review physicians' and psychiatrists' notes regarding Silvas' medical conditions (primarily lower back issues), what he reported to the physicians and the psychiatrists, and the doctor's opinions about Silvas' medical conditions. (Doc. 11-1 at 29-34). SSR 88-13 lists a number of factors an ALJ considers when assessing the credibility of the claimant's allegations of disabling pain, including: (1) nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for pain relief; (5) functional restrictions; and (6) the claimant's daily activities. (*Id.*).

In pertinent part, the ALJ found:

In March 2015, the claimant was noted to have left large paracentral protrusion at L5-S1 that was increased from the prior examination, without compressing the SI nerve root bilaterally, left greater than right. A left paracentral disc protrusion at L4-5 was likely compressing on the left L5 nerve root within the left lateral recess (Exhibit 1F).

MRI of right knee in February 2016 revealed mild sublocations of the patella with mild sprain of the medial and lateral reticulum item along with their origin with mild tendinosis of the patellar tendon and distal quadriceps tendon. There was extensive extreme of the quadriceps that packs suggesting underlying impingement and grade 2 chondromalacia of the patella (Exhibit 1F, pp. 4-5). MRI of left knee did not reveal a definite meniscal tear but there was meniscal changes of the medial and lateral articular cartilage. Mild

subluxation of the patella was noted and minimal tenosynovitis of the popliteal tendon with tendinopathy and tendinosis of the quadriceps and popliteal tendons (Exhibit 1F, pp. 6-7).

Records of House psychiatric clinic note that claimant presenting with anxiety due to multiple psychosocial stressors including a recent DUI, work issues with the upcoming anniversary of his mother's death in January 2014.  He reported he was unable to work and was requesting 2 days off. His gait and station as noted to be within normal limits. Mental status findings were within normal limits and his mood was affect and was noted to be dysthymic and anxious, and was given a note for 2 days off work (Exhibit 2F, p. 19).

In May 2014, the claimant reported having a lot of back pain, but noted his moods were stable.  He was pacing and had to stand.  His mood was euthymic (Exhibit 2F, p. 8).  In June 2014, the claimant reported his medication was working and his sleep and energy was stable and he had no new complaints (Exhibit 2F, p. 10).

In a note dated December 11, 2014, the claimant was complaining that his new primary care doctor would not give him opiates.  The neurosurgeon apparently did not see a reason for him having back pain.  Moderate depressive symptoms were noted with no psychosis. He was fully orientated, with intact memory, concentration and euthymic mood. (Exhibit 2F, p. 21).

St. Ages Medical Center note[d] that the claimant presenting in February 2015 with complaints of shoulder pain, and generalized weakness and lightheadedness. He was discharged with the diagnosis of dehydration, and generalized weakness resolved. He was noted to have normal range of motion and normal strength. He was cooperative.   On June 2, 2015, the claimant underwent lumbar laminectomy and fusion of L4-5 and L5-S1.  Postoperatively he developed dyspnea.  CT of the chest revealed bilateral pulmonary emboli. Bilateral lower extremity Doppler studies were negative for deep vein thrombosis.  The bilateral pulmonary emboli resolved by July 2015.

Robert Lemon, M.D., examined the claimant on July 16, 2015. The claimant was noted to have a normal gait, no sensory or motor deficits, no tenderness or swelling and normal range of motion without obvious weakness.   He could not perform physically strenuous activity, but was ambulatory and able to carry out light or sedentary work (e.g. office work, light house work (Exhibit 6F, p. 5).

Kevin Lester, M.D., examined the claimant on March 30, 2016 for his complaints of bilateral knee pain.   The claimant had mild tenderness to palpation over the inferior patellar pole and medially at the joint lines of both knees.   There was no joint effusion noted. Range of motion of the knees appears full and unimpeded bilaterally. Ligaments appeared stable bilaterally.   Motor skills were deep normal with deep tendon reflexes normal and symmetrical at the knees and ankles bilaterally.   X-rays of the knees revealed degenerative loss of joint space medially on both knees. MRI revealed left knee had degenerative changes medially and laterally

with mild subluxation of the patella. The right knee had mild subluxation of the patella with mild sprain of the medial and lateral reticulum with mild tenderness of the patella tendon and distal quadriceps tendon with chondromalacia.  The impression was bilateral knee degenerative joint disease, and bilateral patellofemoral pain syndrome.  Corticosteroid injections were provided to both knees.  In a letter dated April 2016, Dr. Lester noted the claimant complained of bilateral knee pain and suggestions of early arthritic changes.  MRI scan did not reveal a correctable lesion, and his patella did not have much to do with the problem based on the physical examination.  Cortisone injections improved his symptoms (Exhibit 14F).  In June 2016, the claimant reported 40% improvement from injections, having only a little bit of pain and no pain in the knee joints themselves and no joint effusions.  The range of motion of the knees was full and unimpeded (Exhibit 17F, p. 7).

In October 2016, Neurosurgical Associates Medical Group noted the claimant's gait was normal.  He had focal tenderness on palpation of the mid lumbar spine (Exhibit 21F, p. 21-22). Dr. Kester noted that on November 1, 2016, the claimant was complaining of severe rapid onset left hip pain which appeared to be due to greater trochanteric bursitis. He was given an injection.  X-ray revealed arthritis of the hip and full range of motion.  The claimant reported 3 weeks of relief from his injection (Exhibit 17F, p. 3).

Visit notes of Amireh Rasheed, M.D., on November 9, 2016, indicate [t]he claimant presented for the initial consultation. Examination revealed he was assisted by the cane.  The lumbar spine revealed a surgical scar.  Range of motion was restricted with extension limited to 1- degrees due to pain but normal flexion, right lateral bending, left lateral bending, lateral rotation to the left and lateral rotation to the right.  Heel and toe walk are normal.  FABER test was negative. Pelvic compression test was negative.  Babinski's sign was negative. He had normal appearance, tone and strength of muscles with decreased touch sensation over the right and left calf.  Straight leg raise test was negative.   Diagnoses were post laminectomy syndrome, radiculopathy lumbar region, and other intervertebral disc degeneration lumbar region. A spinal cord stimulator trial was recommended (Exhibit 22F, pp. 26-29).

Spinal cord stimulator trial relieved 80% of his pain (Exhibit 21F, p. 19). A spinal code stimulator was implanted in April 2017 due to his diagnosis of failed back syndrome with lumbar radiculopathy (Exhibit 21 F, pp. 14-15).  Follow up in May 2017 relieved significant improvement of his pain and lower back pain (Exhibit 21F, p. 10).  The claimant had an execration of his back pain in August 2017 (Exhibit 21F, p. 5).  Status post joint injection on July 19, 2017, the claimant reported 80% improvement of pain with increased range of motion (Exhibit 22F, p. 1).  Examination on August 17, 2017, note the claimant reported his cord stimulator improved his symptoms.  His gait was normal and he had moderate discomfort with palpation of the mid lumbar spine (Exhibit 21F, p. 3).  On November 2, 2017, the claimant complained of back and leg pain.  Surgical treatment of a redo of his interbody fusion was discussed. MRI of the lumbar spine revealed pseudo-arthritis with

1

2

3

stenosis (Exhibit 21F, p. 1).  MRI of lumbar spine on December 14, 2017 revealed status post fusion from L4 through S1, L3-L4 broad-based bulge evident with T2 hypersensitivity annular fissure in the midline posteriorly with overall moderate narrowing of the central canal.  Epidural lipomatosis was also present (Exhibit 25F).

4

(Doc. No. 11-1 at 29-31).

5

6

7

8

9

10

11

12

13

14

15

16

17

It is clear the ALJ determined Silvas' statements concerning intensity, persistence and limiting effects were inconsistent with the evidence of the record.  And while the ALJ provided a detailed review of the medical evidence or record, the ALJ did not sufficiently specify what portions of Silvas' testimony were rejected and what specific portions of the medical evidence were inconsistent with the rejected testimony.  Instead, the ALJ recited the medical evidence, which albeit included on occasion Plaintiff's notable improvement of pain with injections and cord stimulator, findings that his normal strength, his more-often-than-not normal gait, preference, but not a medical need, for a cane, as well as the lack of objective medical evidence.  While there are medical references the ALJ cites to in her opinion that one might infer is inconsistent to Silvas' testimony, the ALJ did not draw a nexus between Silvas' testimony and the portion of the record she found inconsistent with the testimony to meet the clear and convincing standard.  Absent a finding of malingering, the record must be sufficient for the reviewing court to discern what the ALJ deemed not to be credible and allow for meaningful review.

18

19

20

21

22

23

Courts must be cautious when making a harmless error determination and will not fault the agency merely for explaining its decision with "less than ideal clarity."  *Brown-Hunter*, 806 F.3d at 492.  Here, aside from the cane issue, the ALJ's opinion did not identify what portions of Silvas' testimony she found not credible and link that testimony to the particular parts of the record supporting her non-credibility determination.  *Id.* at 494.  The Ninth Circuit has determined this constitutes legal error.  *Id.*

24

25

26

27

28

Nor was the error harmless.  When the ALJ opinion lacks such information, the reviewing court cannot "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found Brown-Hunter's[claimant's] testimony to be not credible."  *Id.*   The ALJ's credibility determination and related pain directly impacts the vocational expert's opinion as to available jobs for Silvas.  For example, if the ALJ deemed

1    Silvas' testimony credible that he could not stoop and had to lay down 4 or 5 times a day, the

2    vocational expert testified Silvas would not be competitively employable in the national

3    economy.  (Doc. No. 11-1 at 75).

4         Although the Court finds a remand is necessary, a remand for an immediate award of

5    benefits is not appropriate here.  The Ninth Circuit has noted that cases remanded for an

6    immediate award of benefits are rare.  *Brown-Hunter*, 806 F.3d at 495.  "The touchstone for an

7    award of benefits is the existence of a disability, not the agency's legal error."   Further

8    administrative review will be useful in this case, so the ALJ has the opportunity to amend her

9    opinion to specify what portions of Silvas' testimony, other than the necessity of the cane, she

10   deemed not credible and identify the clear and convincing reasons for finding the testimony not

11   credible.

12        **B.  ALJ's Failure to Account for All Limitations in the RFC Determination**

13        Silvas next assigns error to the ALJ for failing to take account of all of Silvas' limitations

14   in the RFC determination, specifically his use of a cane.  (Doc. No. 15 at 11).  Silvas argues that

15   the ALJ "believed [the cane] was not medically necessary" despite Dr. Critser's medical order for

16   the cane.  (*Id*.).  As a result, Silvas asserts that the hypotheticals posed to the vocational expert

17   improperly did not include Silvas' limited mobility and need for a cane.  (*Id*.).  The

18   Commissioner points out Silvas did not raise this argument below and therefore the argument is

19   waived.  (Doc. No. 16 at 16).

20        A review of the hearing transcript confirms Silvas did not raise any objections to the

21   vocational expert's hypotheticals that did not include Silvas using a cane.  (Doc. No. 11-1 at 67,

22   75-81).  Thus, the Court finds Silvas waived this argument by not preserving the argument below.

23   *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (noting when claimant represented by

24   attorney, they must raise all issues and evidence at their administrative hearing in order to

25   preserve them on appeal).

26        Nevertheless, even if the cane issue was preserved for appeal, the ALJ's conclusion that

27   the cane was not medically necessary, despite Crister's prescription for one, is supported by

28   substantial evidence in the record.  Initially, for the reasons discussed *infra*, substantial evidence

10

1    supported the ALJ's decision to discredit Dr. Critser and give more weight to other treating

2    physicians. (*Infra* at 6-7).   Setting aside Silvas' prescription for a cane, numerous treating

3    physicians noted Plaintiff's had a normal gait as set forth above. (*Supra* at 4-5).  And even when

4    Dr. Crister noted Plaintiff's medical conditions impaired his standing and walking, Dr. Crister,

5    when presented with the opportunity to note that the cane was medically necessary for Silvas to

6    maintain balance or ambulate, did not check the box that a "medically required hand-held

7    assistive device is necessary for ambulation." (Doc. No. 11-1 at 689, 1404).  A cane is not to be

8    presented in the vocational expert hypotheticals when a claimant prefers to use a cane, but it is

9    not medically necessary. *Contreras v. Com'r of Sec. Sec.*, 2017 WL 2798521, at * 7, 11 (C.D.

10   Cal. June 28, 2017).  Based on the hypotheticals presented to the vocational expert, Silvas was

11   found capable of sedentary work, including office helper and mail room clerk. (Doc. No. 11-1 at

12   70-75).  And even if the cane had been included in the hypotheticals, use of the cane would not

13   have impacted Silvas' ability to do sedentary work. *Contreras*, 2017 WL 2798521, at *7.  Thus,

14   based on a review of the record, the ALJ made specific findings and relied on substantive

15   evidence in the record before determining that Silvas preferred to use the cane, but that the cane

16   was not medically necessary.  The Court finds this ground waived, and in the alternative, finds no

17   error, harmless or otherwise, for the ALJ's failure to include the use of a cane in the vocational

18   expert hypotheticals.

19       **C. Discrediting Dr. Critser**

20       Silvas contends the ALJ improperly discredited the medical opinion of treating physician

21   Dr. Critser. (Doc. No. 15 at 12-14).  Silvas argues the ALJ rejected this treating physician's

22   reports and did not refer to range of motion findings or physical examination findings to support

23   her conclusion that Critser relied heavily on Silvas' subjective complaints of pain. (Id.).

24       Because Silvas' claim was filed prior to 2017, the ALJ was required to defer to the

25   treating or examining physician's opinion, even if contradicted by another doctor, unless the ALJ

26   makes findings setting forth specific, legitimate reasons for rejecting it that are based on

27   substantive evidence in the record. *See Reveals v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)

28   (internal quotation marks and citations omitted).  However, an ALJ need not accept the opinion if

11

1    that opinion is brief, conclusory, or inadequately supported by clinical findings. *Bray v. Comm'r*

2    *of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and citation

3    omitted).

4           Courts uphold the ALJ's decision when the evidence is suspectable to more than one

5    rational interpretation. Here, the ALJ concluded Dr. Critser's opinion was not adequately

6    supported by clinical findings. Silvas' argument that the ALJ erred because she did not refer to

7    range of motion findings or physical examination findings to conclude that Critser relied heavily

8    on his subjective complaints of pain is a red herring. The ALJ reviewed Silvas' medical records

9    and discounted Dr. Critser's opinion primarily due to Critser not conducting range of motion

10   tests, or other objective physical examination findings, and instead appeared to rely mainly on

11   Silvas' subjective complaints, finding in relevant part as follows:

12          The opinion of a treating physician or psychologist concerning the
            nature and severity of impairment is entitled to appropriate
13          consideration pursuant to SSR 96-2p, that is, if it well-supported and
            not internally inconsistent or inconsistent with other pertinent
14          clinical evidence   In this case, the doctor apparently relied quite
            heavily on the subjective report of symptoms and limitations
15          provided by the claimant, and seemed to uncritically accept as true
            most, if not all, of what the claimant reported. In fact, review of Dr.
16          Critser's records does not indicate he ever did any range of motion
            testing, and he does not provide any objective physical examination
17          findings. There exists good reasons for questioning the reliability of
            the claimant's subjective complaints. For example, the claimant was
18          noted to have normal gait on multiple occasions throughout the
            record, contrary to what is consistently reported by Dr. Critser (see,
19          e.g. Exhibits 2f; 5F, p. 2; 7F, 16F, 18F, 21F, p. 21). Follow up in
            May 2017 relieved [sic] significant improvement his knee pain and
20          mild lower back pain (Exhibit 21F, p. 10). The claimant had an
            exacerbation of his pack pain in August 2017 (Exhibit 21F, p. 5).
21          Status post joint injection on July 19, 2017, the claimant reported
            80% improvement of pain with increased range of motion (Exhibit
22          22F, p. 1). Examination on August 17, 2017, note the claimant
            reported his cord stimulator improved his symptoms. His gait was
23          normal and he had moderate discomfort with palpation of the mid
            lumbar spine (Exhibit 21F, p. 3).
24
     (Doc. No. 11-1 at 32). The record reflects that none of Dr. Crister's opinions include discussions
25
     of objective physical findings, medical signs, test results or imaging studies. (*See Id*. at 552)
26
     (noting only Silvas "has some sort of change in status" and "needs further analysis for his
27
     prognosis."); 688-92 (checking boxes without reference to exams or other factors); 1404-1407
28
                                                    12

1    (same); 1446 (handwritten summary without reference to any testing or findings).  Based on a

2    review of the record, the Court finds the ALJ's opinion to discredit Dr. Crister's opinion, properly

3    set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the

4    record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  The ALJ could properly discount

5    Dr. Crister's opinion on the basis that it was founded on claimant's subjective complaints without

6    objective findings. *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's

7    opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted

8    as incredible").  The Court finds no error in the ALJ's consideration of the opinion of Dr. Crister

9    and denies this ground.

10                                     **IV.  Conclusion**

11           The Court does not make independent factual determinations, re-weigh evidence, or

12   substitute its decision for that of the ALJ.  *Supra* at 2.  Thus, the question is not whether the Court

13   would have arrived at the same decision on *de novo* review; rather, the Court's review is limited

14   to whether the ALJ's findings are based on the correct legal standards and are supported by

15   substantial evidence.  Applying this standard of review and for the reasons set forth above, this

16   case is due to be remanded on ground one for further findings consistent with this Order but

17   affirmed as to grounds two and three.

18           Accordingly, it is **ORDERED**:

19           1.  Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the

20   Commissioner's decision and REMANDS this case back to the Commissioner of Social Security

21   for further proceedings consistent with this order.

22           2.  The Clerk shall terminate any pending motions and close this case.

23   Dated:    October 7, 2021

24                                                 HELENA M. BARCH-KUCHTA
                                                   UNITED STATES MAGISTRATE JUDGE
25

26

27

28
                                                   13